**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride (SBN: 297557)
ryan@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, Arizona 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**SERAPH LEGAL, P.A.**
Philip R. Goldberg (SBN: 298855)
11045 Camarillo Street, #116
North Hollywood, CA 91602
Telephone: (773) 388-2784
Facsimile: (877) 205-4380
PGoldberg@SeraphLegal.com

*Attorneys for Plaintiff, Deanna Humphrey*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA HUMPHREY, *individually and on behalf of a class of similarly situated persons,*<br><br>Plaintiff,<br><br>vs.<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.,**<br><br>Defendant. | Case No.: 8:23-cv-01378<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681 ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff, **Deanna Humphrey** ("**Ms. Humphrey**"), on behalf of herself and all similarly situated individuals, by and through her attorneys, Kazerouni Law Group, APC, and Seraph Legal, P.A., and complains of the Defendant, **Experian Information Solutions, Inc.** ("**Experian**"), stating as follows:

**DESCRIPTION OF THE CASE**

1. This is an action against Experian for violations of the ***Fair Credit Reporting Act***, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

2. Experian incorporates data into its consumer reports from hundreds, or thousands, of "sources," each of which is referred to as a "furnisher of information."

3. Experian assigns each furnisher a "Subscriber Code" which Experian uses to identify the furnisher within its systems.

4. A majority of these furnishers update their reporting to Experian monthly – *e.g.*, a furnisher of information relating to a credit card may update the balance and status of the account monthly in its reporting to Experian.

5. This results in Experian receiving tens of thousands of data points each month, a significant portion of which relate to accounts which have previously been reported to Experian.

6. To prevent updated data on an account from appearing as an entirely new account each time Experian receives data, Experian's systems utilize the Subscriber Code, as well as certain data reported on each account, such as the account number, to "match" incoming data with account information already in its file.

7. However, for certain furnishers, such as Crescent Bank & Trust Company ("**Crescent Bank**") and U.S. Bank National Association ("**U.S. Bank**"), Experian's systems are often unable to match incoming data.

8. As a result, Experian's systems often incorporate two or more separate, "duplicate" tradelines into the consumer's report, even though the reported data is from the same furnisher and represents the same underlying account.

9. This tradeline "duplication" severely harms a consumers' ability to obtain credit, regardless of whether the tradeline shows 'good' or 'bad' payment history, because a larger number of negative accounts on a consumer's report greatly reduces a consumer's credit scores, while multiple positive accounts harm the consumer's debt-to-income ratios, suggesting to creditors that the consumer lacks sufficient income to repay additional debt.

## JURISDICTION AND VENUE

10. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

11. Experian resides within the state of California and is thus subject to the jurisdiction of this Court.

12. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1), because Experian resides in this District and is the only Defendant.

## PARTIES

13. **Ms. Humphrey** is a natural person residing in the City of Longwood, Seminole County, Florida.

14. Ms. Humphrey is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

15. **Experian** is an Ohio corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

16. Experian is a *Consumer Reporting Agency* ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including the use of interstate mail and telephone communications.

# FACTUAL ALLEGATIONS

17. In March 2016, Ms. Humphrey obtained an auto loan from Crescent Bank.

18. Crescent Bank reported Ms. Humphrey's loan to Experian, which incorporated the data into its file regarding Ms. Humphrey.

19. Crescent Bank reported the loan with an account number beginning 10041.

20. Ms. Humphrey's auto loan was later charged off by Crescent Bank.

21. Upon charging off the account, Crescent Bank furnished updated information regarding the account to Experian.

22. Crescent Bank furnished the updated information with an account number beginning 900013.

23. The updated information included the same account type and "Date Opened" as the information originally furnished to Experian by Crescent Bank.

24. Despite this, Experian's automated systems did not recognize the updated information as pertaining to the same underlying account.

25. As a result, Experian added a second Crescent Bank tradeline to Ms. Humphrey's Experian file.

26. Experian incorporated both tradelines in reports sold regarding Ms. Humphrey, thereby falsely indicating to Ms. Humphrey's creditors and potential creditors that she had two separate auto loans, when she did not.

27. At some point, Experian began reporting a *third* Crescent Bank Tradeline.

28. The third Crescent Bank tradeline was reported with account number beginning 100130.

29. All three tradelines reflected the same "Date Opened" for the account, the same original amount of the loan, and the same date of first delinquency.

30. Experian thus knew, or should have known, that all three tradelines related to a single underlying account.

31. Ms. Humphrey only opened one auto loan – not three – with Crescent Bank.

### Ms. Humphrey's Dispute

32. In April 2022, Ms. Humphrey requested and obtained a consumer disclosure from Experian.

33. Experian's disclosure included all three iterations of the Crescent Bank tradeline.

34. Ms. Humphrey noted the triplicate tradelines and thereafter disputed the reporting of the accounts to Experian.

35. Ms. Humphrey indicated in her dispute that the tradelines were duplicates and included the account number of the Third Crescent Bank tradeline simultaneously appearing on her report.

36. Experian, upon receipt of Ms. Humphrey's dispute, sent Crescent Bank an *Automated Consumer Dispute Verification Request* ("**ACDV**") through a system known as e-OSCAR.

37. Crescent Bank responded, deleting one iteration of the tradeline, but verifying the other two iterations as accurate.

38. A CRA, such as Experian, is required by the FCRA, 15 U.S.C. § 1681i(a)(1)(A), to conduct its own investigation into a consumer's dispute.

39. However, on information and belief, rather than conduct its own independent investigation, Experian relied on the ACDV responses from Crescent Bank, blindly accepting the ACDV results and updating its reporting accordingly.

40. Had Experian conducted its own investigation, it would have, or should have, realized that the disputed tradelines contained data belonging to the same underlying account, and that, at most, only one tradeline should be reporting.

41. Experian failed to update either of the two tradelines which remained to indicate that Ms. Humphrey disputed the accounts.

42. As a result of its failure to conduct a reasonable investigation into Ms. Humphrey's dispute, Experian continued to include both iterations of the Crescent

Bank tradeline in reports sold regarding Ms. Humphrey, despite the obvious similarities in the tradelines.

43. Indeed, in November 2022, Ms. Humphrey sought to finance a new car.

44. Ms. Humphrey visited numerous car dealerships in the Orlando, Florida area, including Greenway Kia North and Deland Kia.

45. Ms. Humphrey applied for financing from at least four separate auto lenders, including Hyundai Capital America and Global Lending Services.

46. Each of these lenders, in conjunction with its review of Ms. Humphrey's application, requested and obtained a consumer report from Experian.

47. On information and belief, each of the reports sold by Experian to these lenders contained at least two Crescent Bank tradelines, which tradelines represented the same underlying account.

48. Experian's inclusion of the duplicate or triplicate tradelines caused significant harm to Ms. Humphrey's credit scores, as a higher number of charged-off accounts on a consumer's report adversely affects the consumer's scores.

49. Likewise, Experian's inclusion of the duplicate or triplicate tradelines increased the amount of debt reported, adversely affecting Ms. Humphrey's debt-to-income ratios.

50. Experian, as a CRA, has a legal duty to invoke procedures to assure the maximum possible accuracy of consumer reports sold. *See* 15 U.S.C. § 1681e(b).

51. The procedures utilized by Experian in producing the consumer reports on Ms. Humphrey failed to identify duplicative reporting of individual accounts and are thus inherently unreasonable.

52. Experian is aware of the flaws in its software which frequently fail to catch and remove duplicate tradelines from appearing on consumers' credit report.

53. Experian has been sued in the past for selling consumer reports containing duplicate tradelines.

54. Experian's policies contrast significantly with those employed by Equifax and Trans Union, the other two of the "Big Three" CRAs, which reported only one instance of the Crescent Bank tradeline on their reports concerning Ms. Humphrey.

55. Experian requires its data furnishers to adhere to Metro 2 standards for credit reporting.

56. Metro 2 is a uniform set of reporting standards and a *lingua franca* utilized by large nationwide CRAs like Equifax, Experian, Trans Union, and Innovis for consumer reporting.

57. Metro 2 standards require data furnishers to make *monthly updates* to balances, payment histories, etc. for any account that does not have a $0 balance.

58. Despite Metro 2's standards, Experian included two Crescent Bank tradelines in reports which it sold regarding Ms. Humphrey which were woefully non-compliant with those standards, as the information had not been updated monthly.

59. Reporting information concerning an auto loan which has not been updated is an inherently unreasonable procedure to assure the maximum possible accuracy of a report.

60. Experian's inclusion of the triplicate tradelines caused significant harm to Ms. Humphrey's credit scores, as the number of charged-off accounts on a consumer's report adversely affects the consumer's scores.

61. In addition to the damage to Ms. Humphrey's credit, Experian's false reporting also caused Ms. Humphrey to suffer embarrassment, damage to her reputation, and emotional distress.

62. Experian's conduct has likewise forced Ms. Humphrey to spend time and money to force Experian to comply with its statutory obligations.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this matter as a Class Action, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), on behalf of herself and the following Classes:

**All natural persons residing in the United States of America:**

**(a)  Pertaining to whom Experian has sold at least one consumer report, within two years of the date of the filing of this Complaint, which report contained at least two tradelines reported by Crescent Bank to Experian which relate to the same underlying account (the "§ 1681e(b) Class"); or,**

**(b)  Who have submitted a dispute to Experian relating to a Crescent Bank tradeline, therein alleging that Experian was improperly reporting the account twice, or as two separate tradelines, which dispute resulted in Experian verifying the disputed information as accurate, within the past two years (the "§ 1681i(a)(1)(A) Class").[1]**

---

[1] Plaintiff reserves the right to amend the definition of the Classes based on subsequent discovery or legal developments.

64. **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Crescent Bank provides loans to consumers in 32 states, and on information and belief, furnishes information to Experian on thousands of consumers. Plaintiff believes that there are at least one thousand (1,000) similarly situated persons belonging to the § 1681e(b) Class, and at least two hundred (200) similarly situated persons belonging to the § 1681i(a)(1)(A) Class. Although the precise number of Class members is unknown, the names and addresses of potential Class members are identifiable through records maintained by Experian.

65. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Classes and which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation:

(a) Whether consumer reports contained duplicate Crescent Bank tradelines;

(b) Whether the procedures utilized by Experian in preparing consumer reports containing duplicate Crescent Bank tradelines were reasonable to assure the maximum possible accuracy of the reports sold;

(c) Whether Experian's policies for investigating consumer disputes into a duplicate tradeline are reasonable; and,

(d) Whether Experian completed a reasonable reinvestigation into the putative class members' disputes.

66. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Experian lacked sufficient procedures to prevent data received on a single underlying account from appearing as two or more separate tradelines in consumer reports sold by Experian. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for absent Class members.

67. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over five hundred consumer cases under the FCRA, as well as many other cases under similar consumer protection statutes. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

68. **Predominance and Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. Experian's conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FCRA. Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's practices. Moreover, management of this action as a Class Action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

69. Absent a Class Action, the Class members will continue to have their rights violated and will continue to suffer monetary and other damages.

70. Experian's actions are generally applicable to the entire Class, and accordingly, the relief sought is appropriate with respect to the entire Class.

71. Ms. Humphrey has specifically assigned her right under the applicable statutes to attorney fees and costs to the undersigned firm representing her.

# COUNT I
## EXPERIAN'S VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
### *On behalf of the § 1681e(b) Class Only*

72. Ms. Humphrey adopts and incorporates paragraphs 1 - 71 as if fully stated herein.

73. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold when Experian sold reports which contained a duplicate (or triplicate) tradeline regarding a loan issued by Crescent Bank.

74. Experian has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed, and frequently result in the reporting of duplicate tradelines.

75. Experian's reporting of duplicate tradelines is the direct result of Experian's assignment procedures which fail to properly match data reported to it with the data already in its file regarding the same account.

76. Experian's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

77. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Humphrey and the putative § 1681e(b) Class pray for relief as follows:

    a.    An order certifying this case as a class action on behalf of the proposed § 1681e(b) Class under Fed. R. Civ. P. 23, appointing Plaintiff and the undersigned counsel of record to represent same;

    b.    An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    c.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    d.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

    e.    Such other relief that this Court deems just and proper.

## COUNT II
### EXPERIAN'S VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
*On behalf of the § 1681i(a)(1)(A) Class Only*

78. Ms. Humphrey adopts and incorporates paragraphs 1 - 71 as if fully stated herein.

79. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least one dispute by Ms. Humphrey into Experian's reporting of a single Crescent Bank loan across three separate

tradelines. Had Experian conducted a reasonable investigation, it would have deleted all but one of the triplicate tradelines.

80. Experian has been sued before for identical conduct and is thus aware that its dispute investigation procedures relating to duplicate, or triplicate tradelines, are flawed.

81. Experian's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to investigate consumer disputes.

82. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Humphrey and the putative § 1681i(a)(1)(A) Class pray for relief as follows:

    a.    An order certifying this case as a class action on behalf of the proposed § 1681i(a)(1)(A) Class under Fed. R. Civ. P. 23, appointing Plaintiff and the undersigned counsel of record to represent same;

    b.    An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    c.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

     d.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

     e.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Humphrey hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **August 1, 2023**, by:

| SERAPH LEGAL, P.A. | KAZEROUNI LAW GROUP, APC |
|---|---|
| /s/ *Philip R. Goldberg* | /s/ *Ryan L. McBride* |
| Philip R. Goldberg, Esq. | Ryan L. McBride, Esq. |
| CA Bar No.: 298855 | SBN: 297557 |
| PGoldberg@SeraphLegal.com | Ryan@Kazlg.com |
| | |
| /s/ *Bryan J, Geiger* | 301 E. Bethany Home Road |
| Bryan J. Geiger, Esq. | Suite C-195 |
| (*Pro Hac Vice* Pending) | Phoenix, Arizona 85012 |
| Fla. Bar No. 119168 | Telephone: (800) 400-6808 |
| BGeiger@SeraphLegal.com | Facsimile: (800) 520-5523 |
| | |
| 11045 Camarillo St., Unit 116 | |
| North Hollywood, CA 91602 | |
| Telephone: (813) 567-1230 | |
| Facsimile: (877) 205-4380 | |

*Counsel for Plaintiff, Deanna Humphrey*